■ In the Matter of LEONARD FUGARDI, Appellant, v DEON M. ANGUS et al., Respondents. [628 NYS2d 77] —Order and judgment (one paper), Supreme Court, New York County (Shirley Fingerhood, J.), entered February 9, 1994, which denied petitioner's application pursuant to CPLR article 78 to annul the respondent Commission's determination finding him guilty of an unlawful discriminatory practice, dismissed the petition, and granted the cross-petition for enforcement of the administrative determination, unanimously modified, on the law, to the extent of striking the respondent Commission's imposition of $10,000 in compensatory damages for mental anguish and substituting therefor the $3,000 award recommended by its Administrative Law Judge (ALJ) and otherwise affirmed, without costs.

The Commission could reasonably conclude, from this record, that a prima facie case of housing discrimination on the basis of race and national origin, in violation of Administrative Code of the City of New York § 8-107 (5) (a) (1), was established by the fact that the complainant is a Black woman with a pronounced West Indian accent, and the evidence adduced at the hearing that petitioner told the complainant over the phone that the house was no longer available even while he continued to advertise it in a local newspaper and was showing the house and negotiating its sale with others. The viability of this prima facie showing of discrimination is not undermined by the Commission's reliance on hearsay to show that petitioner was offering the house to others while refusing to show it to the complainant, since hearsay evidence can be the basis of an administrative determination (*Matter of Gray v Adduci*, 73 NY2d 741, 742). Furthermore, such evidence of contractual conduct might well fall within the so-called "[a]pparent exception" to the exclusionary hearsay rule (Richardson, Evidence, § 204 [Prince 10th ed]). Petitioner having offered no evidence to counter the prima facie showing, the only possible conclusion is that the Commission's determination was supported by substantial evidence (*see, Matter of State Div. of Human Rights [Granelle]*, 70 NY2d 100, 106; *Matter of Maloff v City Commn. on Human Rights*, 46 NY2d 908, 910).

However, we believe the Commission abused its discretion in increasing the ALJ's recommended compensatory damage award. The award of damages was but one of five specifically required remedies proposed by the ALJ and adopted by the Commission. The others included a letter of apology for petitioner's discriminatory conduct and its effects; notification of the Commission's Law Enforcement Bureau when petitioner was ready to list the house again for sale, and advertisement of same in Brooklyn's Black Caribbean media with a notation stating "Equal Opportunity Housing"; providing all rejected applicants with reasons in writing, with copies to the Law Enforcement Bureau; and an order to cease and desist from all discriminatory practices in connection with the sale of these premises. The compensatory damage award was based solely upon the complainant's testimony that she suffered humiliation, outrage, mental anguish, degradation, and emotional and physical trauma, all of which were hindering her efforts to renew her search for housing. This testimony was unsupported by any medical or professional evidence of such injury.

In more than trebling the recommended damage award, the Commission ruled simply that the complainant's mental

anguish warranted greater compensation in light of society's "recogni[tion of] the value of affront to dignity". While we do not dispute the entitlement to "meaningful monetary compensation" in this case, we believe the award recommended by the ALJ, in light of the evidence adduced at the hearing, was adequate. The Commission's dramatic increase of the recommended award was an abuse of its discretion, absent a statement of findings of fact at variance with those made by the ALJ (*see*, Administrative Code § 8-120). Concur—Sullivan, J. P., Wallach, Kupferman, Nardelli and Williams, JJ.